UNITED STATES COURT OF INTERNATIONAL TRADE

```
----------------------------------------------------------------------x
DFI ORGANICS, INC.,                          :
                                             :
                          Plaintiff,         :      Court No. 23-cv-00024
                                             :
               v.                            :
                                             :
UNITED STATES OF AMERICA;                    :
OFFICE OF THE UNITED STATES TRADE            :
REPRESENTATIVE; U.S. CUSTOMS &               :
BORDER PROTECTION,                           :
                                             :
                          Defendants.        :
----------------------------------------------------------------------x
```

## <u>COMPLAINT</u>

Plaintiff DFI Organics, Inc. ("Plaintiff"), through its undersigned attorneys, alleges the following:

1.     This action concerns the unlawful and unauthorized actions of Defendants in their imposition of a third and fourth round of retaliatory tariffs, colloquially referred to as "List 3" and "List 4", against China under Section 301 of the Trade Act of 1974, 19 U.S.C. § 2411 (the "Trade Act"). In addition to being unauthorized by the Trade Act, the process by which the tariffs at issue were put in place violated the requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. §551 *et seq*. ("APA"). Accordingly, List 3 and List 4 duties should be vacated, Defendants should be enjoined from further enforcement of List 3 and List 4 duties and Plaintiff should be refunded all tariffs paid to date.

2.     The Trade Act, was enacted on January 3, 1975 (Pub.L. 93-618, 88 Stat. 1978, codified at 19 U.S.C. Chapter 12) for the express purpose of promoting "the development of an open, nondiscriminatory, and fair world economic system, to stimulate

fair and free competition between the United States and foreign nations, to foster the economic growth of, and full employment in, the United States, and for other purposes."

3.    The Trade Act established authority for the Office of the United States Trade Representative ("USTR") to investigate, *inter alia*, any instance in which an act, policy, or practice of a foreign country—

    i.    violates, or is inconsistent with, the provisions of, or otherwise denies benefits to the United States under, any trade agreement, or

    ii.    is unjustifiable and burdens or restricts United States commerce.

19 U.S.C. §2411(a)(1)(B). This authority is not unfettered, however, and any investigation undertaken must be pursued, assessed and implemented consistent with the constraints imposed under the law.

4.    USTR undertook an investigation into China's unfair intellectual property policies and practices under 19 U.S.C. §2411(a)(1)(B).

5.    USTR was required to determine within 12 months of starting its investigation the responsive action to be taken, if any, based on its findings. See 19 U.S.C. §2414.

6.    USTR did not issue either List 3 or List 4 until well after the expiration of that 12-month period.

7.    The Trade Act permits USTR to modify or terminate any action taken with respect to USTR's Section 301 findings, but such action must be consistent with "the acts, policies, and practices, that are the subject of such action." 19 U.S.C. §2417(a)(1)(B). Defendants in issuing and implementing both List 3 and List 4 disregarded this constraint

on their authority. Despite that constraint, the issuance and implementation of both List 3 and List 4 reflect actions taken by Defendants that extend far beyond that express authority.

8.      USTR imposed additional duties on the products in List 3 and List 4 as explicit responses to China's retaliation, without reference to China's technology transfer, intellectual property, or innovation policies that were the subject of the original investigation. USTR may not fall back on its "modification" authority under Section 307 of the Trade Act (19 U.S.C. §2417) to salvage the duties imposed on products in List 3 or List 4.  Section 307 of the Trade Act does not permit USTR to expand the imposition of tariffs to other imports from China for reasons unrelated to the unfair intellectual property policies and practices originally investigated under Section 301 of the Trade Act.  Even if USTR deems the existing tariffs "no longer appropriate," as it also did here, the Trade Act permits USTR only to delay, taper, or terminate—not ratchet up—the actions already taken.

9.      In addition to being contrary to the requirements of the Trade Act, the Defendants' actions violate the Administrative Procedure Act ("APA"), 5 U.S.C. §551 *et seq*.  Defendants violated APA requirements when interested parties were not provided with sufficient opportunity to comment – whether in favor or against – List 3 and List 4 proposed tariffs.  Moreover, the Defendants' decision to impose these tariffs under both Lists 3 and 4 was made without consideration of all factors essential to rendering its final decision.  Finally, the USTR received over 6,000 comments regarding those goods and associated tariff classifications under consideration for final inclusion in List 3 and List 4. The USTR did not respond to these comments, and did not explain how it considered these comments in its final decision-making.

10.  The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiff pursuant to List 3 and/or List 4.

## JURISDICTION

11.  The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. §1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. §1581(i)(1)(B).

## PARTIES

12.  Plaintiff is an importer of organic and non-organic food and feed ingredients. Plaintiff has imported products from China that are classified under multiple HTSUS subheadings that are subject to the additional *ad valorem* duties under List 3 and List 4, including product imported under HTSUS headings 1109 and 1702.

13.  Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. §702 and 28 U.S.C. §1581(i)(1)(B).

14.  The Office of the United States Trade Representative is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President.  USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4.

4

15.     Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports.  CBP collected Plaintiff's payments of the tariffs imposed by USTR under List 3 and List 4.

**STANDING**

16.     Plaintiff has standing to sue because it is "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. §702; see 28 U.S.C. §2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").  Tariffs imposed by Defendants pursuant to List 3 and List 4 adversely affected and aggrieved Plaintiff because they were required to pay these unlawful duties.

**TIMELINESS OF THE ACTION**

17.     A plaintiff must commence an action under 28 U.S.C. §1581(i)(1)(B) "within two years after the cause of action first accrues."  28 U.S.C. §2636(i).

18.     The instant action contests action taken by Defendants that resulted in additional duties assessed starting on September 24, 2018 on products included in List 3 and List 4.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47974 (Sept. 21, 2018).

19.     Plaintiff's claims accrued upon liquidation of its entries subject to List 3 and List 4 tariffs, at which time CBP determined those duties to be final, and thus Plaintiff

has timely filed this action with respect to all such entries that were not already liquidated as of the date two years prior to this action being filed.

20.    Alternatively, Plaintiff's claims accrued upon its deposit of List 3 and List 4 tariffs at the time of entry, and thus Plaintiff has timely filed this action with respect to all such entries filed within the previous two years of this action.

## RELEVANT LAW

22.    Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices. 19 U.S.C. §2411(b).  If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice.  *Id*. §2411(b), (c)(1)(B).

23.    Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation.  *Id*. §2414(a)(1)(B), (2)(B).

24.    Section 307 of the Trade Act allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id*. §2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

### I.    USTR's Investigation

25.    On August 14, 2017, the President issued a memorandum to Ambassador Lighthizer to "determine, consistent with section 302(b) of the Trade Act of 1974 (19 U.S.C. 2412(b)), whether to investigate any of China's laws, policies, practices or actions

that may be unreasonable or discriminatory and that may be harming American intellectual property rights, innovation, or technology development." *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39007 (Aug. 17, 2017).

26.   In response, on August 18, 2017, USTR began an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40213 (Aug. 24, 2017).

27.   USTR reported the findings from its investigation on March 22, 2018. *See* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018),  available at https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.

28.   USTR's investigation found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce."  *Id*. at 17. USTR specifically determined that:

(1) "China's technology transfer regime—including foreign ownership restrictions and administrative approval and licensing process that are used to require or pressure the transfer of technology from U.S. companies to Chinese entities — is unfair, inequitable and results in nonreciprocal opportunities relative to Chinese companies operating in the United States" (*Id*. at 45);

(2) "China [] intervenes in U.S. firms' investments and related activities in

China through restrictions on their technology licensing" *(Id.* at 48);

(3) "China has engaged in a wide-ranging, well-funded effort to direct and support the systematic investment in, and acquisition of, U.S. companies and assets to obtain cutting-edge technology, in service of China's industrial policy" *(Id.* at 147); and

(4) "China's cyber activities targeting U.S. companies poses significant costs on U.S. companies and burdens U.S. commerce" (*Id.* at 176).

29.    The USTR also published a "Fact Sheet" on March 22, 2018, stating "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. USTR also stated, in accordance with the President's directives, that it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.*; *see also* the President's directive entitled *Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13099 (Mar. 27, 2018).

## II.    Defendants Issue List 1 and List 2 Tariffs Under Section 301 of the Trade Act.

30.    Following USTR's report and associated Presidential directive, and within the 12-month statutory deadline from the initiation of the Section 301 investigation imposed under the statute (*see* 19 U.S.C. §2414(a)(2)(B)), Defendants identified and imposed tariffs on those goods and associated tariff provisions intended to remedy the

estimated $50 billion in harm caused to the U.S. economy by China's identified unfair trade practices.

31.    On April 6, 2018, USTR published notice of a proposed list of goods and associated tariff classifications against which it intended to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14906, 14907 (Apr. 6, 2018).  The proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018."  *Id*. at 14907.  USTR chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

32.    On June 20, 2018, USTR published a final list of 818 tariff provisions subject to an additional duty of 25% *ad valorem*, a list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28710 (June 20, 2018).  The List 1 provisions amounted to "an approximate annual trade value of $34 billion", with the

25% *ad valorem* tariffs associated with those classifications scheduled to go into effect as of July 6, 2018.  *Id.* at 28711.

33.     On August 16, 2018, USTR published final notice of a second list of 274 tariff provisions also subject to an additional duty of 25% *ad valorem*, a list commonly known as "List 2." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40823, 40823-24 (Aug. 16, 2018). The List 2 tariff provisions amounted to "an annual trade value of approximately $16 billion", with the 25% *ad valorem* tariffs associated with those classifications scheduled to go into effect as of August 23, 2018. *Id.*

### III.    Defendants Issue List 3 and List 4 Tariffs in Violation of the Trade Act and APA.

34.     China refused to modify its behavior following the imposition of tariffs under List 1 and List 2.  As a result, the relationship between the U.S. and China continued to deteriorate, and  Defendants returned to Section 301 to impose tariffs on more than $500 billion in additional imports. Although couched in the language of Section 301, these new actions were no longer directed specifically at the findings arising out of USTR's Section 301 Report but, rather, taken in response to other dynamics related to the U.S.-China relationship.

### A.    List 3

35.     Shortly after the President directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China threatened to impose retaliatory duties on the same value of imports from the United States.  In response to these threats,

the President began indicating that any retaliation by China would be met with additional tariffs on Chinese goods. *See* Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion in Chinese Goods*, THE HILL (June 15, 2018), available at http://thehill.com/homenews/administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods ("The president said the United States will pursue additional tariffs if China retaliates 'such as imposing new tariffs on United States goods, services or agricultural products; raising non-tariff barriers; or taking punitive actions against American exporters or American companies operating in China.'").

36.    On June 18, 2018, before USTR implemented the List 1 and List 2 tariffs, the President formally directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion. The President acknowledged China's threatened retaliatory "tariffs on $50 billion worth of United States exports" as well as the continued expansive trade deficit motivated his decision.  THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), available at https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

37.    In accordance with the President's directive, USTR stated that it would design the new duties in order to "offset" China's threatened retaliatory measures, rather than address any of the harms identified in its Section 301 investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on*

*the President's Additional China Trade Action* (June 18, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were needed to respond to the retaliatory and "unjustified tariffs" that China intends to impose to target "U.S. workers, farmers, ranchers, and businesses").

38.     China retaliated to the Defendants' threats and actions by imposing 25% ad valorem tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

39.     On July 17, 2018, or approximately one week after China imposed its first round of retaliatory duties, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent ad valorem duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33608 (July 17, 2018). USTR invoked Section 307(a)(1)(C) of the Trade Act as the basis for these further actions, which allows USTR to "modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id.* at 33609 (citing

19 U.S.C. §2417(a)(1)(c)).  USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments.  *Id*. at 33608.

40.    USTR's notice failed to adequately explain how the proposed expansion of these tariffs related to the findings from the Section 301 investigation, and instead focused almost exclusively on China's decision to impose "retaliatory duties" as the primary basis for its proposed action.  *Id*. at 33609. In its notice, USTR tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)."  *Id*. Although it focused on China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated.  See *id*.  USTR made no substantive reference to China's technology transfer, intellectual property, or innovation policies that were the subject of the agency's original investigation, and made no effort to tie the additional duties to be implemented by List 3 to the impact those Chinese policies were previously determined to have had on U.S. commerce.

41.    Press statements by Defendants further reinforced the nexus between List 3 and China's retaliatory measures. *See, e.g.,* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative; *see also* @realDonaldTrump,    TWITTER    (July    10,    2018,    9:17    PM    EDT),

https://twitter.com/realDonaldTrump/status/1005982266496094209; @realDonaldTrump,

Twitter        (July        25,        2018,        7:01        AM        EDT),

https://twitter.com/realDonaldTrump/status/1022074452999225344.

42. On August 1, 2018, Ambassador Lighthizer announced that, in light of

China's retaliatory duties, USTR would propose to increase the additional duty from 10%

to 25% *ad valorem*. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE,

*Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1,

2018),        available        at        https://ustr.gov/about-us/policy-offices/press-office/press-

releases/2018/august/statement-us-trade-representative.        In        his        announcement,

Ambassador Lighthizer not only recognized that the initial June 18, 2018 directive from

the President regarding additional duties on $200 billion worth of Chinese goods was "in

response to China's decision to cause further harm to U.S. workers, farmers, and businesses

by imposing retaliatory duties," he further clarified that the USTRs proposed increased was

also a result of China "illegally retaliat[ing] against U.S. workers, farmers, ranchers and

businesses." *Id.*

43. On August 7, 2018, USTR, at the direction of the President, formally

proposed "raising the level of the additional duty in the proposed supplemental action from

10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed*

*Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices*

*Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg.

38760, 38760 (Aug. 7, 2018).  USTR also set new dates for a public hearing over six days

ending on August 27, 2018. *See id.*; see also OFFICE OF THE UNITED STATES TRADE

REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17,

2018) (modifying hearing schedule), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

44.    At the same time, USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018 – less than a month later – as the new deadline for both initial <u>and</u> rebuttal comments from the public.  83 Fed. Reg. at 38761. By collapsing those periods into one, both USTR and the public were denied the opportunity to consider comments at the hearing. USTR's combination of initial and rebuttal deadlines also ensured interested parties would have insufficient time to review and respond to the filed comments. USTR further exacerbated the comment and hearing issues by limiting each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001.  Despite those obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. *Id*.

45.    Eleven days after receiving final comments from the public, the President directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.  Once again, the President was clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motivated his decision, and he immediately promised to proceed with "phase three" of the plan – *an additional $267 billion tariff action* – "if China takes retaliatory action against our farmers or other industries." *Id*.

46.    On September 21, 2018, USTR published notice of the final list of products subject to the additional duties, a list commonly known as "List 3." *Notice of Modification*

*of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. at 47974.  USTR imposed a 10% *ad valorem* tariff on all products under List 3 beginning September 24, 2018, which was set to increase automatically to 25% on January 1, 2019. *Id*. USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses.  *Id*.

47.     USTR cited Section 307(a)(1)(B) of the Trade Act as support for its actions. Section 307(a)(1)(B) authorizes USTR to "modify or terminate any action" where "the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased."  19 U.S.C. §2417(a)(1)(B).  USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies."  83 Fed. Reg. at 47974.  USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China."  *Id*. at 47975.

48.     Defendants initially delayed the scheduled increase from 10 to 25% on the List 3 duty rate due to trade negotiations with China. When negotiations failed in May of 2019, however, USTR increased the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export.  See *Notice of Modification of*

*Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("List 3 Rate Increase Notice"); see also *Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019).  The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate.  *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20459. Distinct from past rounds, USTR did not seek public comment but rather simply announced that the increase would occur.  *Id.*

49.     The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of the limited number of products USTR extended exclusions. *See, e.g., Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

**B.     List 4**

50.     On May 17, 2019, eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, USTR announced its intent to proceed with yet another list – List 4 – covering even more products of Chinese origin subject to additional duties.  Under USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth an additional $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 84 Fed. Reg. 22564 (May 17, 2019).  USTR's decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce."  *Id*.

51.     Although USTR both solicited comments and sought participation in public hearings regarding this last proposed list, the comment process was again woefully inadequate: USTR required witnesses to submit drafts of their testimony by June 10, 2019, some seven days before the deadline for fully developed written comments, and again limited witnesses to five minutes of testimony at the hearing.  *Id*.

52.     On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, the President announced the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem*.  @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/real DonaldTrump/status/1156979446877962243 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

53.     On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43304 (Aug. 20, 2019).  List 4A, effective September 1, 2019, would impose a 10% *ad valorem* duty on goods worth roughly $120 billion.  *Id*. at 43304.  List 4B, effective December 15, 2019, would impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors").  *Id*. at 43305.  Once again, USTR did not address any of the nearly 3,000 comments submitted or

any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id*. Additionally, made no effort to tie the additional duties to be implemented by List 4 to the impact that those Chinese policies were previously determined to have had on U.S. commerce.

54. As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act. *Id*. But instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id*.

55. On August 30, 2019, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 45821 (Aug. 30, 2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id*. at 45822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id*.

56. On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447,

69,447 (Dec. 18, 2019).  USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate from 15% to 7.5% *ad valorem*. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3741 (Jan. 22, 2020).

57.     In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states-and-china-reach.  To date, Defendants have not yet imposed additional duties on imports covered by List 4B.

58.     The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint.  Although the proposed duties on products covered by List 4B remain suspended, the President has continued to threaten their imposition if China does not meet its obligations under their limited trade deal. *See, e.g.*, @realDonaldTrump, TWITTER     (June       22,       2020,       10:22       PM       EDT), https://twitter.com/realDonaldTrump/status/1275252814206447618 ("The China Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!").

**STATEMENT OF CLAIMS**

**COUNT ONE**

**DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974**

**(WITH RESPECT TO LIST 3)**

59.　　Paragraphs 1 through 58 are incorporated by reference.

60.　　The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a).

61.　　The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 tariffs.

62.　　Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. §2411(b).

63.　　USTR did not base the imposition of Section 301 duties on Chinese products covered by List 3 on the acts or policies found in its investigation and report to "burden or restrict" U.S. commerce as required by 19 U.S.C. §2411(b)(1).

64.　　If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. §2414(a)(1)(B), (2)(B).

65.　　USTR's action giving rise to List 3 occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

Therefore, USTR failed to take action to impose duties on List 3 products from China within the 12-month period required by 19 U.S.C. §2414(a)(1)(B) and (2)(B).

66.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. §2417(a)(1)(B).  Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act. Congress did not authorize USTR to escalate its focused investigatory findings into an open-ended trade war.

67.     Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate."  19 U.S.C. §2417(a)(1)(C).  Section 307 of the Trade Act does not authorize Defendants to increase tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

68.     Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 are *ultra vires* and contrary to law.

## COUNT TWO

## DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974

## (WITH RESPECT TO LIST 4)

69.     Paragraphs 1 through 68 are incorporated by reference.

70.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a).

71.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 4 tariffs.

72.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. §2411(b).

73.     USTR did not base the imposition of Section 301 duties on Chinese products covered by List 4 on the acts or policies found in its investigation and report to "burden or restrict" U.S. commerce as required by 19 U.S.C. §2411(b)(1).

74.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. §2414(a)(1)(B), (2)(B).

75.     USTR's action giving rise to List 4 occurred in August 2019, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017. Therefore, USTR failed to take action to impose duties on List 4 products from China within the 12-month period required by 19 U.S.C. §2414(a)(1)(B) and (2)(B).

76.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices

increases or decreases. 19 U.S.C. §2417(a)(1)(B). Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act. Congress did not authorize USTR to escalate its focused investigatory findings into an open-ended trade war.

77.     Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. §2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to increase tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

78.     Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 4 are *ultra vires* and contrary to law.

## COUNT THREE

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

## (WITH RESPECT TO LIST 3)

79.     Paragraphs 1 through 78 are incorporated by reference

80.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. §706(2).

81.     Defendants' imposition of List 3 duties more than 12 months after the initiation of the investigation is in excess of statutory authority and is without the observance of procedure required by law for the reasons set forth in Count One.

82.     Defendants did not offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.  Defendants' imposition of List 3 duties for reasons other than China's policies relating to technology transfer, intellectual property, and innovation is therefore in excess of statutory authority and is arbitrary, capricious, and an abuse of discretion.

83.     Defendants also issued List 3 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale.

84.     The notice and comment provisions of the APA require, among other things, that the agency give "interested persons an opportunity to participate" in substantive agency determinations through submission of written data, views, or arguments," and that the agency shall explain its decision, "[a]fter consideration of the relevant matter presented." 5 U.S.C. §553(b), (c).

85.     By collapsing the deadlines for the submission of both initial and rebuttal comments from the public, and denying interested parties sufficient opportunity to respond to comments made at the public hearing, Defendants denied Plaintiff a meaningful opportunity to comment on the imposition of List 3 duties without observance of procedure required by law.

86.     Defendants did not identify and respond to relevant, significant issues raised during the notice and comment period and public hearings regarding the imposition of additional duties on products included in List 3, and thus the imposition of those duties was without observance of procedure required by law.

87.     Plaintiff is therefore entitled to a judgment that Defendants' actions giving rise to List 3 and the collection of additional duties on products covered by List 3 are contrary to law.

**COUNT FOUR**

**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

**(WITH RESPECT TO LIST 4)**

88.     Paragraphs 1 through 87 are incorporated by reference

89.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. §706(2).

90.     Defendants' imposition of List 4 duties more than 12 months after the initiation of the investigation is in excess of statutory authority and is without the observance of procedure required by law for the reasons set forth in Count One.

91.     Defendants did not offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.  Defendants' imposition of List 4 duties for reasons other than

China's policies relating to technology transfer, intellectual property, and innovation is therefore in excess of statutory authority and is arbitrary, capricious, and an abuse of discretion.

92.     Defendants also issued List 4 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale.

93.     The notice and comment provisions of the APA require, among other things, that the agency give "interested persons an opportunity to participate" in substantive agency determinations through submission of written data, views, or arguments, and that the agency shall explain its decision, "[a]fter consideration of the relevant matter presented." 5 U.S.C. §553(b), (c).

94.     By establishing an abbreviated timeframe for the submission of comments, and denying interested parties sufficient opportunity to respond to comments made at the public hearing, Defendants denied Plaintiff a meaningful opportunity to comment on the imposition of List 4 duties without observance of procedure required by law.

95.     Defendants did not identify and respond to relevant, significant issues raised during the notice and comment period and public hearings regarding the imposition of additional duties on products included in List 4, and thus the imposition of those duties was without observance of procedure required by law.

96.     Plaintiff is therefore entitled to a judgment that Defendants' actions giving rise to List 3 and the collection of additional duties on products covered by List 4 are contrary to law.

* * *

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court

(1) Declare that Defendants' actions resulting in tariffs on products covered by List 3 are unauthorized by, and contrary to, the Trade Act;

(2) Declare that Defendants arbitrarily and unlawfully promulgated List 3 in violation of the APA;

(3) Vacate the List 3 rulemaking;

(4) Order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to List 3;

(5) Permanently enjoin Defendants from applying List 3 against Plaintiff and collecting any duties from Plaintiff pursuant to List 3;

(6) Declare that Defendants' actions resulting in tariffs on products covered by List 4 are unauthorized by, and contrary to, the Trade Act;

(7) Declare that Defendants arbitrarily and unlawfully promulgated List 4 in violation of the APA;

(8) Vacate the List 4 rulemaking;

(9) Order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to List 4;

(10) Permanently enjoin Defendants from applying List 4 against Plaintiff and collecting any duties from Plaintiff pursuant to List 4;

(11) Award Plaintiff its costs and reasonable attorney fees; and

(12) Grant such other and further relief as may be just and proper.

February 6, 2023

Respectfully submitted,


*/s/ Ivan W. Bilaniuk*
DINSMORE & SHOHL, LLP
801 Pennsylvania Avenue N.W.
Suite 610
Washington, D.C. 20004
Phone: (202) 559-3611
Fax:    (202) 372-9141
ivan.bilaniuk@dinsmore.com

David A. Zulandt
DINSMORE & SHOHL, LLP
1001 Lakeside Avenue
Suite 990
Cleveland, OH 44114
Phone: (216) 413-3851
Fax:    (216) 413-3839
david.zulandt@dinsmore.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

### *DFI Organics, Inc. v. United States of America, et al.*
### Court No. 23-cv-00024

I hereby certify that on February 6, 2023, I caused copies of Plaintiff's Summons and Complaint to be served on the following parties by certified mail, return receipt requested:

Attorney-in-Charge
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza – Room 346
Civil Division
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

*/s/ Ivan W. Bilaniuk*
Ivan W. Bilaniuk